**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**

|  |  |
|---|---|
| AVON COTTAGES LTD**;** AVON MOTEL LTD; ESY AVON COTTAGES, LLC**,** Individually and on behalf of all others similarly situated**;**<br><br>        **Plaintiff,**<br><br>   **v.**<br><br>PCL CONSTRUCTION SERVICES, INC.; PCL CONSTRUCTION ENTERPRISES, INC.; PCL CIVIL CONSTRUCTORS, INC.<br><br><br>        **Defendants.** | **Civil Action No. 4:17-cv-104**<br><br><br><br><br><br><br><br><br><br><br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs, Avon Cottages Ltd.**;** Avon Motel Ltd; and ESY Avon Cottages LLC, by and through their undersigned counsel, bring suit individually, and on behalf of individuals or entities owning property located in North Carolina's Outer Banks that rent or lease those properties, as well as all individuals or entities owning or operating businesses, that have sustained injuries and damages as the result of the power outage caused by the defendants.

## <u>INTRODUCTION</u>

1.      This proposed class action (the "Action") is brought under Rule 23 of the Federal Rules of Civil Procedure for actual, compensatory, and punitive damages arising

1

from the power outage caused when defendants damaged the transmission line that supplies power to Hatteras and Ocracoke Islands (a part of what is known as the "Outer Banks"), forcing a mandatory evacuation of thousands of individuals and effectively shutting down business on the Islands.

2.     Individuals and entities owning property located on the Outer Banks that rent or lease those properties have been and will continue to be damaged by the Power Outage due to loss of ability to provide lodging based on lack of power and the emergency evacuation of non-residents.

3.     Individuals and entities owning or operating businesses located on the Outer Banks that have been and will continue to be damaged by the Power Outage due to loss of ability to operate their businesses based on lack of power and the emergency evacuation of non-residents.

4.     This Action seeks to compensate individuals and entities owning property located in North Carolina's Outer Banks that rent or lease those properties, as well as individuals and entities owning or operating businesses in the Outer Banks that depend on sale of goods or services to customers, that operate businesses which require access to reliable electric power, and have suffered direct losses in loss of personal property, inventory and merchandise for sale, have been denied the use and enjoyment of their property and that have been and continue to be damaged by the Power Outage, to punish those responsible for the Power Outage, and to deter this from happening again.

## JURISDICTION/VENUE

5.     Jurisdiction is proper in this Court and under 28 U.S.C. § 1332(a) because complete diversity exists among the parties and the amount in controversy exceeds seventy five thousand dollars ($75,000.00), exclusive of interests and costs. Jurisdiction is also proper in this Court under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of five million dollars ($5,000,000.00) exclusive of interests and costs.

6.     Venue is proper in this district under 28 U.S.C. §1391(a)(2).

## PARTIES

7.     Plaintiff Avon Cottages, Ltd., is a limited liability company organized under the laws of North Carolina who owns and leases for rental income real property in Avon, North Carolina. Since the Power Outage, Plaintiff has suffered and continues to suffer injuries and other damages related to the Power Outage, including, *inter alia*, lost rental income.

8.     Plaintiff Avon Motel, Ltd., is a limited liability company organized under the laws of North Carolina who owns and leases for rental income real property in Avon, North Carolina. Since the Power Outage, Plaintiff has suffered and continues to suffer injuries and other damages related to the Power Outage, including, *inter alia*, lost rental income.

9.     Plaintiff ESY Avon Cottages LLC, is a licensed contractor, organized under the laws of the state of North Carolina whose principal place of business is in Dare County, North Carolina. Named plaintiffs bring this action on their own behalf for

3

damages suffered by them, and also as representatives of the class of persons similarly situated. Plaintiff has suffered and continues to suffer injuries and other damages related to the Power Outage, including, *inter alia*, lost income.

10. Upon information and belief, Defendant PCL Construction Services, Inc., is a corporation doing business in the United States with its corporate headquarters in Denver, Colorado, and offices located in Anchorage Alaska; Charlotte, North Carolina; Denver, Colorado; Los Angeles, California; Minneapolis, Minnesota; Orlando, Florida; San Diego, California; and Seattle, Washington. PCL Construction Services, Inc., has, *inter alia*, caused tortious injuries and damages to Plaintiff and proposed Class Members, in whole or in part, in North Carolina, and regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from the State of North Carolina.

11. Upon information and belief, Defendant PCL Construction Enterprises, Inc., is a corporation doing business in the United States with its corporate headquarters in Denver, Colorado. PCL Construction Enterprises, Inc., has, *inter alia*, caused tortious injuries and damages to Plaintiff and proposed Class Members, in whole or in part, in North Carolina, and regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from the State of North Carolina.

12. Upon information and belief, Defendant PCL Civil Constructors, Inc., is a wholly owned subsidiary of PCL Construction Enterprises, Inc., with offices in Tampa, Florida; Seattle, Washington; and Raleigh, North Carolina. Defendant PCL Civil Constructors, Inc., is licensed to do and does business in the State of North Carolina. It

4

has, *inter alia*, caused tortious injuries and damages to Plaintiff and proposed Class Members, in whole or in part, in North Carolina, and regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from the State of North Carolina.

**FACTUAL ALLEGATIONS**

13. Defendant PCL Construction Services, Inc., is a corporation that provides commercial construction services throughout the United States.

14. PCL Construction Enterprises, Inc., is a privately owned company that provides industrial and civil construction services in North America.

15. Defendant PCL Civil Constructors, Inc., is a wholly owned subsidiary of PCL Construction Enterprises, Inc., and provides infrastructure contractor services, mainly focusing on bridge construction.

16. Defendants (hereinafter PCL entities) are recognized as possessing special skill and expertise in planning, designing, gathering materials, construction techniques and accomplishing intricate and difficult construction projects for private and governmental entities throughout the world.

17. The Herbert C. Bonner Bridge is a 2.7-mile long bridge that spans the Oregan Inlet, connecting Bodie Island to Hatteras Island. It is the only bridge connecting Hatteras and Okracoke Islands to the mainland United States. While scheduled ferry service permits visitor and business access on a limited basis from the south, most commercial trade and most visitors utilize the bridge for routine and emergency access to the region. All electrical power to Hatteras and Okracoke Islands are

5

supplied by buried transmission lines that are incorporated into and follow the footprint of the Herbert Bonner Bridge.

18. Upon information and belief, in July 2011, in recognition of the special expertise and ability to perform of Defendants PCL Entities, the North Carolina Department of Transportation awarded a design-build contract to PCL to design and construct a replacement of the existing Bonner Bridge, which had been damaged due to time and weather.

19. On or about March 16, 2016, NCDOT broke ground on the replacement bridge, with an estimated cost of $246 million, and an estimated project completion date of Fall 2019.

20. As part of the design plan, the Bonner Bridge construction was to utilize stainless reinforcing steel and deeper pilings to protect against corrosion and bridge scour.

21. As a highly skilled construction company, Defendants PCL Entities possessed actual knowledge of the regulatory and common law duty of contractors to locate any and all utility easements prior to commencing work on a project. Such location and marking is of grave importance because the contractor has actual knowledge of the necessity for communities to be supplied with adequate electrical power for commerce, security, and safety of persons and property.

22. Defendants PCL Entities commenced construction by employing a massive workforce including trucks, cranes, specialized equipment, barges, steel and concrete assemblies.

6

23. The bridge is a manmade structure, anchored on dry land at either end, or resting on pilings driven deep into the ground underneath. It is completely within the corporate limits of the State of North Carolina, and principles of North Carolina negligence law determine the reasonableness of its conduct. Any use of small boats or barges in furtherance of construction was incidental, and not maritime, and at all times the owners were in actual direct control of any watercraft, and no limitation of liability proceeding should lie.

24. Upon information and belief, despite their familiarity with conditions gained by being on site for over a year and despite having constructed a large portion of the bridge replacement, on or about July 27, 2017, PCL drove a steel casing into the main underground power cable on the south end of the Bonner Bridge, causing it to sever, thereby cutting all electricity to Hatteras and Ocracoke Islands.

25. The impact on all communities on Hatteras and Okracoke Islands, as well as the surrounding villages, was immediate. The communities were plunged into darkness. Refrigeration and air conditioning failed. Traffic signals were out. The July August summer months on Cape Hatteras cause a vast influx of visitors who seek a vacation at the beach. These persons are completely unsuited to fend for themselves far away from their homes and pose an immediate humanitarian and safety problem for local authorities.

26. Recognizing this immediate peril to the affected communities, on or about July 27, 2017, due to the power outage, the Governor of North Carolina declared a state

7

of emergency, and ordered a mandatory evacuation of all non-residents of Ocracoke Island.

27. On or about July 29, 2017, due to continuing loss of power, the mandatory evacuation was ordered for all non-residents of Hatteras Island, including the villages of Rodanthe, Waves, Salvo, Avon, Buxton, and Frisco.

28. Upon further inspection, and upon information and belief, officials determined that in addition to the main power line having been severed, two other power lines were also damaged.

29. Officials have advised that the damaged power lines were located in an area that is difficult to access, and, upon information and belief, power was finally restored on August 3, 2017, with visitors being allowed back on the Islands at noon on August 4, 2017.

30. The power outage occurred during the middle of the high tourist season in the Outer Banks, and has caused economic hardships for businesses who rely on the income from the summer tourist season.

31. Because all non-residents were ordered to evacuate the islands after the power outage due to Defendants severing the power cables, rental property owners, including Plaintiffs Avon Cottages Ltd. and Avon Motel Ltd., have lost income due to those early rental terminations, and will continue to lose income for future rentals due to the uncertainty of the power restoration.

8

32.     Other businesses, such as Plaintiff ESY Avon Cottages LLC, also rely on the use of power in order to conduct their business activities on Hatteras, which was interrupted by the power outage.

33.     In addition to the loss of income, Plaintiffs have also incurred additional expenses relating to the loss of power, including direct loss of personal property and additional expense in securing and saving personal property and inventory.

## CLASS DEFINITION

34.     Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated, who are members of the following Class:

> All Natural Persons and entities residing in the United States that owned real property on Hatteras and/or Ocracoke Island(s), including the villages of Rodanthe, Waves, Salvo, Avon, Buxton, and Frisco (collectively, "the Islands"), that was not exclusively used as a primary residence between July 27, 2017 to August 4, 2017, and who suffered lost rental income and revenue, damage to that property from, or whose use and enjoyment of that property was impacted by, PLC's transmission line damage; All Natural Persons and entities residing in the US who owned or operated businesses on the Islands between July 27, 2017 to August 4, 2017 and who lost income or revenue, including through loss of customers and interruption of their business ("The Class").

35.     Excluded from the Class are the Defendants, their subsidiaries, affiliates, officers, directors and employees, members of their immediate families, their officers', directors', and employees' immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the foregoing has a controlling interest.

9

36. A class action lawsuit is appropriate in this matter as follows:

a. **Numerosity**. The proposed class is so numerous that joinder is impractical. There are hundreds if not thousands of individuals and entities owning property located in North Carolina's Outer Banks that rent or lease those property and that engage in vacation and residential rental of that real property. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

b. **Commonality**. There is a well-defined community of interest in that the questions of law and fact common to the class predominate over questions affecting only individual class members. Such questions include, and include, but are not limited to, the following:

    i. whether a Power Outage caused by damage to power transmission lines occurred;

    ii. whether one or more of the Defendants caused and/or contributed to causing the Power Outage;

    iii. whether the Power Outage has harmed residents and property owners in North Carolina's Outer Banks;

    iv. whether the Power Outage has prevented Plaintiffs and the Class Members from being able to entice rental customers to visit and rent properties in North Carolina's Outer Banks;

    v. whether Plaintiff and the Class Members have experienced and are experiencing loss of rental income due to cancellations;

    vi. whether the Power Outage has prevented Plaintiff and Class Members form being able to provide rental customers access to rental properties located in North Carolina's Outer Banks;

    vii. whether one or more of the Defendants' conduct was negligent;

10

viii.     whether one or more Defendants' conduct has created a private nuisance;

ix.     whether, and to what extent, Defendants engaged in abnormally dangerous, ultra-hazardous activities for which they are strictly liable;

x.     whether Plaintiffs and the proposed class members were injured by the Defendants' acts or omissions;

xi.     whether the Plaintiffs and proposed class members have suffered economic damages due to the Power Outage; and

xii.     whether one or more of the Defendants' conscious and/or deliberate acts or omissions causing or contributing to the Power Outage displayed recklessness, willfulness, and/or wantonness.

c.     **Typicality**. Plaintiffs' claims are typical of those of the Class. Plaintiffs and the Class have suffered similar harm as a result of one or more of the Defendants' actions, and one or more Defendants have engaged in a common course of conduct giving rise to the claims of Plaintiffs and all proposed Class members, and these claims are based on the same legal theories and interests.

d.     **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' interests do not conflict with the interests of the Class. Plaintiffs have retained competent and experienced counsel in complex class actions, mass torts, construction, and environmental litigation.

e.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class members is impracticable. The court system would be overwhelmed if every member of the proposed class was required to file a separate action. Further,

11

individual litigation presents a potential for inconsistent or contradictory judgments and the prospect of a race for the courthouse and an equitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

f. The various claims asserted can be certified under the provisions of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## COUNT I
## NEGLIGENCE

37. Plaintiffs repeat, reallege and make a part hereof each and every allegation contained in the preceding sections of this Action and incorporates same by reference as though fully set forth herein.

38. All times material hereto, the Defendants were under a duty to utilize reasonable care in undertaking and carrying out their collective and respective activities during construction of the Bonner Bridge.

39. All times material hereto, the Defendants were under a duty to utilize reasonable care to property owners that could be harmed by their collective and respective activities during construction.

12

40. Prior to the incident which resulted in the damage to the power lines, one or the Defendants had actual and/or constructive knowledge of the placement of the power lines, and knew or should have known that driving the steel casing into the exact location would result in damage or destruction of the lines. Defendant's actions and inactions were grossly negligent, reckless, willful, and/or wanton.

41. Plaintiffs and the Class are entitled to a judgment that Defendants are jointly and severally liable to Plaintiffs and the Class for damages suffered as a result of Defendants' negligence, gross negligence, recklessness, willfulness or wantonness. Plaintiffs and the Class should be compensated for damages in an amount to be determined by the trier of fact, including punitive damages for the Defendants' conduct.

## COUNT II
## PRIVATE NUISANCE

42. Plaintiffs repeat, reallege and make a part hereof each and every allegation contained in the preceding sections of this Action and incorporates same by reference as though fully set forth herein.

43. Plaintiffs, and the Class Members, have among other legitimate interests, an interest in utilizing their residential real properties located in North Carolina's Outer Banks for vacation and residential rental.

44. The Defendants' participation the negligent construction and machinery operations resulted in loss of electrical power which forced interruption of use of the Plaintiffs' and Class Members' rental and lease properties located in North Carolina's Outer Banks.

13

45.     The combined effects of Defendants' actions and/or inactions resulting in the damaged power transmission lines and power outage worked a hurt, inconvenience, and damage to the Plaintiffs and Class Members by tortiously intruding upon their interests in the use and enjoyment of their rental and lease properties located in North Carolina's Outer Banks, including but not limited to properties in Hatteras Island, Ocracoke Island, and the villages of Rodanthe, Waves, Salvo, Avon, Buxton, and Frisco.

46.     The Power Outage caused or contributed to by Defendants constitutes a private nuisance that has caused and will continue to cause injury to Plaintiffs and the Class, including monetary losses to Plaintiffs and the Class by depriving them of the ability to, among other things, obtain rentals of their rental and lease properties located in Hatteras Island, Ocracoke Island, including the villages of Rodanthe, Waves, Salvo, Avon, Buxton, and Frisco.

47.     As a direct and proximate result of the Defendants' actions, and continuous damage Plaintiffs' and the Class Members' interests in utilizing their rental and lease properties located in the Outer Banks, Plaintiffs and Class Members have also sustained mental suffering and anguish.

48.     The Defendants had actual and/or constructive knowledge of facts and circumstances prior to the Power Outage that could have prevented the Power Outage.

49.     Defendants have acted in an intentional and unreasonable, and/or negligent, grossly negligent, reckless, willful, and wanton manner.

50.     Defendants, by their intentional, conscious and/or deliberate unreasonable acts and/or omissions complained of herein, and/or as the evidence may show,

14

displayed negligence, gross negligence, reckless indifference, willfulness, and/or wantonness in creating the private nuisance described herein.

51. Alternatively, the private nuisance described herein is the result abnormally dangerous activities of the Defendants.

52. Defendants are liable to Plaintiffs and the Class for injuries, and past, present and future actual, special, and punitive damages sustained as the direct and proximate result of the private nuisance.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, for themselves, and on behalf of all others similarly situated, demand judgment against Defendants, jointly and severally, as follows:

A. an order certifying the class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiff as the class representatives; and appointing undersigned counsel as counsel for the class;

B. economic and compensatory damages in the amounts to be determined at trial,

C. punitive damages in an amount sufficient to punish the Defendants' for their conduct;

D. pre-judgment and post-judgment interest at the maximum rate allowable by law;

E. attorney's fees and costs of litigation;

15

F.      such other and further relief available under all applicable state and federal

laws and any relief the Court deems just and appropriate;

16

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands trial by jury.

Respectfully submitted,

Dated: August 4, 2017.

<u>/s/ Claude W. Anderson, Jr.</u>
THE MOODY LAW FIRM, INC.
Claude W. Anderson, Jr.
NC Bar No. 19448
500 Crawford Street, Suite 200
Portsmouth, VA 23705
(757) 393-6020 (phone)
(757) 399-3019 (facsimile)
woody@moodyrrlaw.com

Willard Moody, Jr.
NC Bar No. 24071
500 Crawford Street, Suite 200
Portsmouth, VA 23705
(757) 393-6020 (phone)
(757) 399-3019 (facsimile)
will@moodyrrlaw.com

MOTLEY RICE LLC
Fred Thompson III
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
(843) 216-9000 (phone)
(843) 216-9450 (facsimile)
fthompson@motleyrice.com

*Attorneys for Plaintiff*

17